My name is Tim Weisman, and I'm here representing the petitioner, Multistar Industries, Inc. And if I could just reserve a couple of minutes for rebuttal, I'd appreciate that. In keeping with your comment about the timeliness, I was going to, given the uniqueness of this case, I was going to go through a couple of facts, but if you prefer, I could get down to the legal argument. The question is, what is your problem at this point? It appears, it appeared in the briefs that the government was representing that you were going to get a chance to contest the challenged problems down the line, if it became relevant. And in fact, in their last ruling, they did decide the issue, and presumably you will get a chance to contest it. But in terms of the case we have before us, what you're challenging doesn't appear to have made any difference to the decision. And not only that, the district, they never even decided the question, so we couldn't review it on the merits. The best we could do would be to send it back, and why would we send it back when they've already now decided it? They have not decided the issue that we raised with respect to the 38515 administrative appeal, which they punted on originally. So, as I read your briefs, I was struggling to understand your issue as well, which your injury was, was that you wanted them to adjudicate, I think it was violation number 5 and violation number 11. Even though that wouldn't have an effect on the bottom line determination, you wanted to get some ruling on it. But now they've given you that ruling, so I'm also struggling to find out what's left, why this isn't moved. Well, they gave a ruling the day the out-of-service order was set to go into effect, but they basically declined to issue a substantive decision on the merits of our regulatory and legal issue with violations number 5 and 11. But don't you have that now? I mean, they gave a detailed analysis of why they think the tanks are cargo tanks, is that it? Yes. They gave a detailed analysis citing their past case law decisions, and you can appeal that. So, you have your ruling that you can now take up to the higher level and get it reviewed. So, why aren't things now moved as to the preliminary ruling? I think it's an issue of procedural due process for my client, because but for this court's stay of the out-of-service order, which was the first final order that we appealed before the 385.15 appeal, we would now be out of business. But you're not. But now you may be if we deny this is moved because you now have another ruling in which you have tried to upgrade some of the violations. And you've also now gotten a ruling on the violations that you're challenging here. So, it seems that you have plenty of process, and I suppose you can file for another stay. You can file a new petition for review from the new ruling, and I suppose you can file for another stay, which would involve a merits question of whether they have erroneously decided what they decided. But as of now, our case seems to be over or moved or nonexistent. I don't think they've ever addressed the issue of our 385.15. They didn't do it in the new ruling that just came out? Are you talking about the supplemental filing that was just recently made? Yes. That was a response to our 385.17 upgrade request. But they addressed the specific points that you were concerned about. They explained why they thought those two things were violations and why they thought you had tanks that were subject to these cargo tank regulations, correct? They did as part of the separate regulatory procedure to… Well, what difference does it make if they decided the issue? Well, there it makes a difference. You can appeal it. You can get the clarification on whether you have cargo tanks or not. Well, I think our issue was always on the timing of this issue is the agency investigator was the one who recommended we do it the way we did, which was basically… So what? I mean, the point is that the first ruling, the ruling that's now before us, the challenges to these violations would not have mattered. Is that much right, to that ruling? I apologize. Could you repeat that? Is it correct that the violations you were challenging in this case would not have mattered to the decision that you're challenging in this case, the ultimate decision that you couldn't operate because you had too many violations? Because those violations, even if you took them off the table, would not have cleared up the number of violations that you would have had would still have been enough to take you out of business, out of operation. Is that right? That is correct. So, therefore, there is nothing in this case that would enable you to get that ruling because you're not – weren't injured. And the best you could do was to say, oh, yes, but if we fix up the other violations, then these might matter, to which the government's response was, well, at that point you will get a ruling on the challenges that you're making now. And as it turned out, they actually gave you the ruling earlier because you, in fact, didn't fix up the other violations, but they still have given you a merits ruling in the new decision that just came out, which you can challenge. So it's really a mystery what your problem is. Well, I – I don't see your problem as your client's out of business for the moment. Right. But in the sense of how you were injured by this ruling, I don't understand it. Yeah, and it is the timing issue because under the regulation 385.15 or 385.17, there is a very short time window for the due process element to come into play here. In other words, for a petitioner like Multistar to redress its injuries with the agency before that 45-day period comes and they're out of business because there's no stay procedures in the regulations. So I think our point was now, absent the court stay, we would have been out of business now for approximately 60 days before the – Okay, but we're over. I mean, we're now here on the merits of the issue, and you have to tell us why you're entitled to any relief now in this case. And I haven't heard that. Well, I think – I think the proper procedure the court should have followed pursuant to the regulations is that they should have addressed our merits within the 45-day window under 385.15. But it wouldn't have done you any good. You still would have been out of operation. Actually, in a way, you got lucky. Because they didn't do it, you got a stay. If they had done it, you wouldn't have gotten a stay because you – except if somebody thought there was something to your merits argument. So are you – I'm trying to understand what you're seeking, and I'm sympathetic to the sense that, well, this amounts to a fix-it ticket, and even if it's unsatisfactory, whether or not you fix it, you still want to have an opportunity to challenge their adjudication about cargo tanks versus portable tanks. But are you – now that you have gotten this ruling, are you saying that what you're seeking is a ruling from us that the agency had an obligation to adjudicate the issue immediately? Is that what you're trying to get from us? Yes, and we do cite a couple of cases in our briefing with respect where an agency fails to address a substantial issue that's raised on appeal that that violates – if it could have a bearing on the final determination, which is whether our client stays in business. But isn't that – even that rule, that request for rule, isn't it just advisory at this point because now you do have a ruling? And so nothing we say about the speed with which the agency has to adjudicate a violation has any effect on you. I guess I didn't see this most recent ruling that was just filed as an adjudication of our 385.15 because the premise of that letter ruling, if you will, was you have to correct these violations that we decided not to make a substantial ruling on in the 385.15, and here's why we think you have to correct them. But they did that in a whole separate procedure. So now what we're left with is we file another 385.15 appeal with the agency, raising the exact same issues we just raised that they decided not to respond to originally, all the while we're placed out of service. Why can't you appeal the 385.17 ruling, their decision, which addresses the very points that you're concerned about? We can. So then you can get that adjudicated. But we're out of service in the meantime. But, I mean, nothing we would have done, no ruling on the first 385.15 would have had any effect on that anyway, right? Because you were deemed unsatisfactory whether you got an adjudication of those two issues or not. Well, I think the hope of the company was that the uncontested violations would be addressed within the 45-day window under the 385.17, and then a substantive ruling would be issued on the 385.15 on the contested violations, all giving us an opportunity to then go to court if we lost on the 385.15, or to file another 385.15 if they didn't upgrade our 385.17. The way the agency handled it, in our opinion, really put us in a bind because we had no ability, other than to request a stay from the court, to be able to avoid the harm to our client, which is being placed out of service. So, and, you know, as far as ripeness and standing and the arguments raised by the agency, it would seem to me that these issues with respect to the 385.15 on violation 5 and 11 were ripe because they were part of the reason why we were going to be placed out of service in conjunction with the uncontested violations. Well, they were and they weren't. I mean, they actually weren't because they could have been completely eliminated and you were still going to be placed out of service. That is true. And now we're at the point, if you read the most recent decision, that we've corrected most of the uncontested violations. I think there's one or two left. But now we're left back with the 385.15 and we're going to be placed out of service. But can't you seek, as Judge Berzon was saying, you seek a stay and you say you're likely to win on the merits? We could file another stay with this court, yes. There's no state procedure with the agency. Then the issue is, you know, at issue. I mean, then the court can look at the actual merits and decide whether you've made a sufficient likelihood of success that you're entitled to a stay. But the way you were trying to set it up, I mean, as I say, I think in a way you sort of lucked out to have gotten a stay as much as you stayed in business as long as you stayed in business based on that ruling because that ruling was correct. I mean, correct in the sense that there was no way what you were challenging was going to affect it at the time it was made and for the period that has ensued until now. So you've stayed in business or in operation until now, even though the ruling, the underlying ruling that said this other ruling couldn't have mattered, you're right now unsatisfactory, you haven't impeached it in any way. I mean, you've impeached, you're trying to impeach two of the violations, but they wouldn't have changed the outcome. You still would have been deemed unsatisfactory and inoperative. Right. Unless we had successfully corrected the other violations through the 385.17 and then the only issue was the 385.15. Well, until, I mean, not unless, until because, you know, the time had run and you hadn't corrected them. So you would have been out of operation for some period of time. Correct. Had you not gotten the stay, even though the stay as it turns out, you know, even though as it turns out there's nothing that was going on in this case that would have changed the outcome. So I don't understand your problem. Given the timeline for the agency here and the timeline for the court, it almost seems like you would have to make some sort of capable of repetition yet evading review type argument and you didn't make that because I don't see, if I'm understanding your underlying point, which is it's not fair that the agency didn't adjudicate these things so that with that adjudication and your correction you could have gotten an upgrade. There's never going to be enough time for us to review that quickly enough so that you don't go out of business. I mean, so it's always, by the time we get to you, it seems like it would always be moved. Well, the way these normally work, because I've done a few of these in the last 20 years, is if you get a quick adjudication on the 385.15 and you lose, then you decide to take corrective action and pursue that through the 385.17 procedure, which is what we're negotiating now with the agency, so that's a possibility. But I guess the frustration from my client's standpoint was they were told by the agency to pursue these alternative sets of procedures and then they felt like the rug was pulled out from them when the agency did not. Is the mediation effort over? Are you going back to it? The mediation with the court, we have continued to remain in contact with the court mediator and as recently I think as last week. Anything else? I see no need to go into the substantive issues on the cargo tank, cargo tank and motor vehicle issue at this point. Thank you. Thank you very much. Thank you. Good morning. May it please the Court. I am Jonathan Levy with the United States Department of Justice, representing the Department of Transportation and the Federal Motor Carrier Safety Administration in this case. With me is Jed Maloud from the FMCSA and I'd be happy to avoid wasting any of the Court's time and answer any questions that the Court may have. Obviously, we believe that there is no due process issue here for the reasons that have been discussed. There is a laundry list of dozens of other violations that this company had that are very serious safety issues involving their transportation of anhydrous ammonia, which is a very dangerous substance and those alone not only justified but required the unsatisfactory rating and the order to cease motor carrier operations. It does seem unfair. You give them a fix-it ticket. You say here are all your violations and they acknowledge some they want to fix, but you won't adjudicate the ones they want to challenge so that they can work on both of them concurrently. Well, the way they – with respect, Your Honor, the way – I view the system as quite fair and the way they work on them concurrently is essentially what they are doing right now, which is through the 385.17 process for requesting an upgrade. And in that process, they have obviously made both of their types of arguments. They have obviously said we are trying to fix these dozens of violations that we don't contest and we also do contest these two other violations. And as the panel pointed out, the agency has in fact already issued a decision, a denial of the request for upgrade, which in fact discusses both sets of issues. It says you have not brought yourself into compliance with respect to the violations that you admit or at least do not contest, I should say. And it also goes on to say and we, you know, stand by the violations which you claim are, you know, legally invalid because of this cargo tank argument. But, you know, I mean, what's odd about the whole thing is that, in fact, the contested violations therefore weren't any more relevant the second time than they were the first. That is correct. And the agency presumably had discretion to choose whether to address them or not and it chose to do so. And in a way, again, that, you know, gives Multistar some assistance in terms of it tees up the issue for further review. But the difference, I guess, is that if they challenge the current order, they won't run into the same problem because the upgrades will also be involved in the challenge and therefore you won't have this hole where some things are, enough things are unchallenged that you can't, you're still going to be unsatisfactory. I actually don't know the answer to that question, Your Honor, because they have unsuccessfully, the hypothetical in the briefs that Multistar presented was, look, the problem is, what if we fix everything that we aren't contesting and then want to move forward? And the answer is that in that situation, they would request an upgrade and if an upgrade were denied on the basis of the contested violations, that would tee the issue up. But from a timing perspective, don't, what they're saying, as I understand it, and I'm not, I haven't looked through the whole timeline, but it sounds like they're really put to the choice of either upgrade, of making corrections possibly very expensive to violations they don't believe are violations or the agency will put them out of business. And the only way to avoid being put to that choice is if the agency will adjudicate the violations, whether or not it affects the bottom line, so that they have, they can quickly within that timeframe appeal them. I don't think that's accurate, Your Honor, because they can fix what they think they're supposed to fix and simultaneously challenge what they want to challenge and they will get one ruling on that sort of amalgam, if you will. I guess their argument would be that they're spending all this money to fix things that might not matter if they can't change the other ones. I take that to be an argument that they are making and I think that that's just the reality of the system. If they brought in one of their trucks for a California State Safety Inspection and it had flames coming out of the tailpipe and it failed inspection because it had flames coming out of the tailpipe and the inspector also said, by the way, your brake lights don't meet our standards and they came back and said, we know that with flames coming out of the tailpipe, we can't put this truck on the road, but we disagree with you about the taillights. I don't think any court would say, okay, you get to now adjudicate the taillight issue. It's moot, it's not redressable, whatever term you want to apply to it. The fact is that they're going to have to fix the flames coming out of the tailpipe before this other issue gets addressed and that is the situation that we have here. I think that is accurate. I also... You know, I gather from what you said that you're not providing us any or providing Multistar with any assurance that they're going to get review of those issues, of the challenged violations, even from the second decision. Is that right? There is no guarantee of that because in administrative review, one possible outcome would be for the agency to look at this and say, you still have not fixed the many, many violations that are unchallenged and it is still true that those, that failure means that you're not entitled to an upgrade. That is one possible administrative outcome here. If that were the outcome, they could, of course, seek judicial review and say that the agency erred in denying their request for upgrade and as part of that judicial review, again, they would raise their issues. And again, a court might decide those issues or might conclude that it doesn't have to decide those issues. It might conclude, looking at the record, that flames are still coming out of the tailpipe and so that's the answer and that alone justifies the agency's decision not to grant an upgrade. But this is a point where they may not get review of the question that they want exactly when they want it, but due process doesn't require that. Due process requires that they be heard on issues that are relevant to the agency decision and the agency decision that we're talking about here is the rating, the unsatisfactory rating. Why can't they claim an injury from having to spend money to do something that might be futile? The answer is that this Court, and I think the panel sort of alluded to it earlier, this Court can't redress that particular type of injury in this particular setting. I don't see that. There's the bottom line decision, which is the one the agency wants to focus on, but there's other decisions, too, and the decisions are that it is in violation for these specific things. And each of those decisions is a separate agency decision, which is what they're trying to challenge, and I don't see why that's erroneous. Those are not the type of agency action for which judicial review is available under the Hobbs Act. Well, I mean, isn't it easier at this point? You're having now decided those questions. We may have this whole problem in the next case, but the question of the exact issue being raised, i.e., a due process violation for not having gotten an answer, they've gotten an answer so far. Now, if they now go to, I mean, I had understood you just have said in your briefs that they would get an answer in the upgrade determination, but I guess what you were saying was if they turned out to be successful in their upgrade. Not in their upgrade, but in fixing all of the other. That's what I mean. Yes, that's correct. And that is the hypothetical that they present in their brief. They say, look, the problem here, I think this is a fair characterization, is that they say, look, the problem here isn't really now. It's what happens if, and there's a hypothetical phrase in their brief, if we fix all of the other uncontested violations, that's their phrase. If we fix all the uncontested violations to FMCSA's satisfaction, the problem is then this question will not have already been answered. And I think a fair response is, in addition to the fact that that's hypothetical and may never happen and we don't know, but if they do succeed in fixing everything that they don't contest to the agency's satisfaction, then presumably the only reason to deny an upgrade would be the remaining contested violations. But what you said just recently in terms of this, whether this issue was moved anyway, is not, there's still an internal appeal, and the internal appellate body could do the same thing they did the first time, which is not decide the challenged violations with regard to the cargo tanks. Is that right? That is possible. That is one possible outcome. But again, it would presumably only do so in the same context that it did it the first time, which is saying, look, you haven't fixed enough. But all that means is the new letter hasn't changed anything. Well, I think the new letter demonstrates that Multistar's argument that this issue will never be decided if it's not decided right now is false. No, it doesn't seem so because you're telling me that it may come out of the agency without a decision. It may come without or it may come with, I think, is the key point. And as the panel alluded to earlier, this question is not yet right because there are all these other violations out there that justify the unsatisfactory rating. And this question really only comes into play and only would become deserving of judicial scrutiny only if it has an effect on the bottom line. But that assumes that the injury of having to spend money on the possibility that they might get approved when they won't get approved unless these challenges are resolved is not a cognizable injury. Well, you can phrase it in terms of cognizable injury. I think it's a little bit more accurate to use the phrase of redressability. So the redressability is what is before this court right now. But if we said that, in fact, these were portable tanks, not cargo tanks, that would certainly solve the specific injury, which is that they have to change or modify or upgrade their portable tanks. It would potentially have an effect, but only, again, contingent upon the fixing of everything else. And so it would really be an advisory opinion because... But what they would come in and say is, look, if we had a definitive ruling that these are cargo tanks and not portable tanks, we can't fix those. That's what I understand them to be saying. It's too expensive. We're not going to do it. So we wouldn't bother with everything else. I think there are... I mean, isn't that their basic position? It wasn't put anywhere near that clearly, but that's what I understand. I think there are some implications to that effect. I'm not – I'm honestly not sure that that's true. I'm honestly not sure that it is that expensive or that it would, in fact, put them out of business. There are some vague implications to that effect, but I don't know whether that is correct or not. But the fact is that they don't get to choose what the agency looks at when, as long as the agency does not behave arbitrarily. And it can't be arbitrary for the agency to say, look, you haven't fixed this long list of violations that you don't even contest. You're not entitled to an upgrade. We're required to give you an unsatisfactory rating with all these things. So we're not going to reach out and gratuitously decide this other issue, even if it would help you decide what to do. In the case that's before us now, it was decided at the lower level. And in this case, it was decided – in the new proceeding, it was decided at the lower level, right? So it's not so gratuitous. In other words, you're reviewing a decision that has been made on that issue. Well, that decision is not before this Court. I understand. And, in fact, I would point out that that decision has, for reasons that are unknown to us, Multistar has not even initiated the process of filing an administrative – for administrative review of that particular decision. Didn't it just come out the other day? It came out – I believe it's dated November 21st. And what Multistar has done is it's actually filed a third request for upgrade under 385.17 more recently. So that's the current state of play is that there are two requests for upgrade that have been denied. Neither of those denials has been – has Multistar sought administrative review of. And there is a third – And the two that they're contesting would cost $5 million to fix. And all the other ones would cost $100,000. Would it be appropriate for the agency not to adjudicate the one they're contesting? That would obviously be hugely more expensive than the others. Is that your position? It would not be a denial of due process, which is the only claim that's being made here. Your question was a little more nuanced, which is whether it would be appropriate or not. And I don't know the answer to that. But it certainly wouldn't be a denial of due process. Do you think that they would be able to show sufficient injury and redressability for standing for challenging that sort of problem? They might or might not be able to do that at the 385.17 process. But they would not be able to do that in the procedural posture that we are here, where all they are seeking judicial review of is the decision to give them the unsatisfactory rating. And they concede that they deserve the unsatisfactory rating regardless. Well, that's how you characterize it. But we have a final order that has all of these different decisions within it. So I guess you were going to explain why we couldn't review that. Why you can't review the 385.17? The 385.15 is a final order with many decisions within it. And you want to characterize it as the only thing before us is the bottom line. And they want to characterize it as having multiple decisions. And so but your thought was, no, the court is limited to reviewing only the unsatisfactory rating. Yes, the Hobbs Act, which is what grants this court jurisdiction, allows the court to review final decisions of the agency. And there is case law regarding what constitutes a final decision. So is it your position that there is no final agency decision in this case on the challenged violations? Because although the lower level determination decided that the appellate level did not, so there's just not a decision? The decision under review is a decision to rate the multi-star unsatisfactory. I understand. That's the components to it. Yes. You could challenge the components to it. Yes. Is your position that this cargo tank question is not a component of the final decision? Because even though it was one of the original violations that was found, by not deciding it at the appellate level, they basically backed it out of the decision. So it's not in the decision. I believe, if I'm understanding your question, that the answer is yes. In other words, the final decision that is before this court is the October 1st decision in the 385-15 proceeding. Which you would say does not, because it didn't affirm, it didn't decide anything about these particular challenged violations, they're not part of the decision that we're reviewing. What it decided was that it was unnecessary to address those. So, I mean, not in there. That's what I'm trying to find out. I think that's correct. Aren't you saying it would be harmless? It's a harmless error? That's one of the things we are saying, yes. Are you saying it's harmless, or are you saying that it was never, there's no final agency decision as to whether those violations even existed? Well, you have to have those, or you can't get to unsatisfactory. Because if all of the components don't exist, then you can't have an unsatisfactory conclusion. No, no, I mean only the two challenged ones. I'm not quite getting the question correct. But the two challenged ones can be backed out and you still have an unsatisfactory rating. Well, are they? But as a technical matter. As a technical matter. Are they backed out? In other words, is it your position that there was no final agency decision as to whether there were violations? I think the answer is that the final agency decision was that the unsatisfactory rating should stand because the uncontested violations were still there. And so I think the answer to your question is that the agency decision under review does not rely on those. And they couldn't have challenged the lower level decision and the upper level decision doesn't have this in there is what you're now saying. That's right. But the second one does. So why can't, so if the first, the 385.15 is not before us, is that your argument? No, the 385.15 is what is before you. That's the one that's before us. Yes. And so if the argument is that that's a violation, that that's an error, that there's an error, that the decision is an error, I guess I'm not understanding why every part of that decision is not before us. Now, you could argue that some of the, that any error as to 5 and 11 are not, are harmless because they don't affect your ultimate conclusion. But I guess I don't understand if you're arguing that those two violations are not before us. The argument, the argument would be that they're not before you because what the final agency decision says is the unsatisfactory rating stands. It is correct. The reason it is correct is because of all of the uncontested violations. The violations number 5 and 11 are not, don't matter, wouldn't change the rating. Therefore, we're not issuing a final decision. We're not approving them. We're not saying there was a violation? I think that's correct. They did, they. So they're not, so you now take the position that there is no violation on 5 and 11. Is that correct? There was a violation of 5 and 11 that was found by the lower part of the administrative body. The upper, the administrative review process did not rely on those two violations in reaching its ultimate decision that the unsatisfactory rating is correct and that is the ultimate decision that is before this Court. I'm sorry if I'm not being clear on this. Well, that's a much clearer, and I'm not sure it's what you said in your briefs. It seems to be, I mean, you seem to be saying in the briefs that there was no injury from it, but not that there wasn't a decision on it. But now, I mean, if you think about it, it appears that, in fact, there just wasn't a decision on it. The decision was not to rely on those, I think is the best way to put it. Right. It turned out to be more complicated than we thought. And I apologize for taking the entire time. No. Thank you. Thank you. Just a couple of points, just to clarify the record. There are dozens of violations. Not about that point. I.e., is there a final agency decision that's even reviewable as to the violations when the final component of the agency decision-making structure hasn't decided the question? They're simply saying we don't care. They're, in essence, saying we're not finding a violation as to that, or are they saying? Well, you don't have to fix those two points is what I heard the agency lawyers say. That's what the most recent 385.17 denial says. They go at length as saying that we disagree with your position and you need to fix it. That's true. And, therefore, if the next level affirms that, you will have a final agency decision. But if there's never, unless and until there is a decision by the final agency decision-making, that there is a violation as to those issues, then what are we reviewing? Why isn't there just no final agency decision as to those violations? Right. And I think our argument was that by not deciding those two violations in the original 385.15 petition, they violated our due process because they forced us then to correct those violations to avoid harm. But you're not arguing that there was a final decision on them. You're arguing that there wasn't one, but there should have been. Correct. Correct. And here's the other problem. If we do reach an upgrade. Do we decide, I mean, just as a matter of administrative law, don't we only decide final agency decisions? Don't we only review final agency decisions? Well, I don't think either one of us disagrees that the original 385.15 is a final agency order. As to what it decided, but it didn't decide. Right. Which was they did not decide. All right. So I understand what you're saying. So you're not arguing with that. You have to be arguing then that we couldn't possibly review the merits of anything. Right. All we would do is say you should have decided that. Yeah. And then remand it back to the agency to address these issues, because they are material to the issue of whether those violations should be removed in calculating their true safety rating. Because the problem we're in now is if we get an upgrade based on the corrective action, we could no longer challenge those two violations because they would argue it's moot. We've got our satisfactory safety rating, so there's no need for us to decide whether you were right on violation 5. So you're saying we can't upgrade without prevailing on these challenges. Well, the most recent upgrade request we just submitted, we have agreed to remove those tanks from service at a significant financial cost to the company in order to stay in business. And that would not be reviewable because they would contend that that's a moot point then because we upgraded your rating so you have to. But there's nothing to stop you from instead pursuing. Other than being out of business. I'm sorry? Other than being out of business because of the out-of-service order. So you've agreed to remove these tanks that they say are cargo tanks? Yes. So there really is nothing to review at this point, is that correct? Well, they have not made a decision on that response yet, so we don't know what the agency's response to that. So you're continuing in negotiations with the agency? Correct. Okay. I have one final question. I understand this was all a very hurried process, and I gather that you're still in mediation. Is there any mileage in our simply suspending decision in this case and giving you another month or two to continue the mediation process? That would be wonderful from my standpoint. I'm not sure if the agency would agree to that. Yes, sir? Your Honor, in our view, the stay, for the reasons we've been discussing, should never have been issued because the stay gives them more relief than they would have been issued. So your problem is the stay. It's not whether we decide the case, right? That's correct. As long as the stay is eliminated, then providing some time for the continued negotiations to come to fruition would be fine with us. But we would sort of strenuously object to any continuation of the stay. Okay. Thank you both very much. Thank you. The case of Multistar Industries v. Department of Transportation is eliminated, and we are in recess.
judges: Zipps, Berzon, Ikuta